**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| MATTHEW JOHNSON, | * | |
| *Plaintiff,* | * | |
| v. | * | Civil Action No. RDB-24-2311 |
| ANNE ARUNDEL COUNTY | * | |
| POLICE DEPARTMENT, | * | |
| *Defendant.* | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION</u>

Through the instant litigation, Plaintiff Matthew Johnson ("Plaintiff" or "Johnson") has brought this retaliation claim against his current employer, Defendant Anne Arundel County Police Department[1] ("Defendant" or the "Department"). (ECF No. 1.) Through the operative Complaint, Johnson alleges that his employer retaliated against him, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, following his involvement at a union meeting on February 6, 2024.[2] (ECF No. 1 ¶¶ 6–31.) In brief, Johnson asserts that after he spoke about the Department's proposed transfers to patrol and how such

---

[1] As an initial matter, Defendant correctly notes that Anne Arundel County Police Department is *non sui juris*. (ECF No. 11-1 at 3–5; ECF No. 13 at 1.) Johnson concedes that Anne Arundel County, Maryland is the proper entity to this lawsuit—not the Department—and his proposed Amended Complaint endeavors to substitute Anne Arundel County, Maryland for the Department, in addition to adding two Department employees as additional named defendants to this suit. (ECF No. 15-1; ECF No. 15-2 at 1–2.)

[2] In his proposed Amended Complaint (ECF No. 15-1), Johnson adds the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634; and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, as bases to his claim of retaliation, in addition to Title VII and Maryland Fair Employment Practices Act ("MFEPA"), MD. CODE, STATE GOV'T §§ 20-601 to 20-611. Johnson, however, does not explicitly address his claim of retaliation under the FLSA or the MFEPA in any of his filings.

transfers would impact reassigned officers' careers, Defendant took the adverse action of confirming his reassignment to patrol, despite his experience and credentials.  (*Id.*)

Presently before the Court are two motions—one filed by Defendant (ECF No. 11) and one filed by Plaintiff (ECF No. 15).  First, the Department's Motion to Dismiss (ECF No. 11) seeks dismissal of Johnson's original Complaint pursuant to Federal Rule of Civil Procedure 12(b)(4) for insufficient process, Rule 12(b)(5) for insufficient service of process, and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Johnson responded in opposition and requested leave to amend (ECF No. 12), and Defendant replied (ECF No. 13).  Thereafter, Johnson filed an unauthorized surreply[3] captioned "Response to Defendant's Reply to Opposition to Defendant's Motion to Dismiss" (ECF No. 14), which includes a "Memorandum of Law in Support of Plaintiff's Response to Defendant's Reply to Opposition to Defendant's Motion to Dismiss and Motion to Amend Complaint" (ECF No. 14-1) and a proposed order (ECF No. 14-2).  A few minutes after filing the aforementioned surreply, Johnson submitted a similar filing captioned "Plaintiff's Response to Defendant's Reply to Opposition to Defendant's Motion to Dismiss *and Motion to Amend Complaint*" (ECF No. 15 (emphasis added)), which included a proposed "Amended Complaint"[4] (ECF No. 15-1), as well as the same "Memorandum of Law in Support of Plaintiff's Response to Defendant's Reply to Opposition to Defendant's Motion to Dismiss and Motion to Amend

---

[3]  Surreplies are highly disfavored in this District, *Medish v. Johns Hopkins Health Sys. Corp.*, 272 F. Supp. 3d 719, 722 (D. Md. 2017), and Plaintiff neglected to move for leave to file this submission, *see* Local Rule 105.2(a) (D. Md. 2025) ("Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed."). Nevertheless, because this unauthorized submission is, for the most part, identical to Plaintiff's subsequent filing at ECF No. 15, the Court need not address Plaintiff's filing at ECF No. 14 further.

[4]  The Motion is not accompanied by a "redlined copy" of the proposed amended complaint—as required by Local Rule 103.6.

Complaint" (ECF No. 15-2) and proposed order (ECF No. 15-3) previously submitted to the Court with his surreply. That later filed submission—referred henceforth as Johnson's "Motion for Leave to File Amended Complaint" (ECF No. 15)—is the second motion pending before this Court, and is unopposed as of the date of this filing.

The Court has reviewed the parties' submissions and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2025). For the reasons set forth below, Defendant's Motion to Dismiss the original Complaint (ECF No. 11) is GRANTED, and Johnson's claim for retaliation under Title VII is DISMISSED WITH PREJUDICE. Johnson's Motion for Leave to File Amended Complaint (ECF No. 15) is DENIED, as the proposed amended complaint attached thereto is futile. Nevertheless, the Court will afford Plaintiff leave to file a revised Amended Complaint should Plaintiff desire to continue pursuing his retaliation claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634.

## BACKGROUND

Except as otherwise noted, the following factual allegations are sourced from Plaintiff Matthew Johnson's Complaint (ECF No. 1) and proposed Amended Complaint (ECF No. 15-1).

Johnson is a 41-year-old, white male who has been employed by the Anne Arundel County Police Department since 2009. (ECF Nos. 1 ¶¶ 6–7; 15-1 ¶¶ 8–9.) He currently holds the rank of detective. (*See, e.g.*, ECF Nos. 1 ¶ 10; 15-1 ¶ 12.) In his pleadings, Plaintiff emphasizes that he "has an exemplary record, specialized training and clearances for highly specialized work." (ECF Nos. 1 ¶ 8; 15-1 ¶ 10.) Prior to his transfer back to patrol in early 2024, Johnson was assigned to a division of the "Homeland Security & Counter-Terrorism

Squad." (ECF Nos. 1 ¶ 23; 15-1 ¶ 26.)

According to Plaintiff, at some point prior to January 26, 2024, the Department issued "a notice of detectives and specialized officers being sent back to patrol to fill a staffing shortage." (ECF Nos. 1 ¶ 9; 15-1 ¶ 11.) Plaintiff alleges that on January 26, 2024, Capt. Timothy Davis ("Davis")—Plaintiff's supervisor whom he seeks to add as a named defendant to this litigation through his proposed Amended Complaint—contacted Johnson while Plaintiff was on vacation to notify Plaintiff of his selection for patrol. (ECF Nos. 1 ¶ 10; 15-1 ¶ 12.) According to Johnson, Davis explained that "the number of officers needed [to fill the staffing shortage] expanded by two," and that Plaintiff "was the last added to the list." (ECF Nos. 1 ¶ 10, 15-1 ¶ 12.) Johnson appears to claim that it follows that "if the number officers needed to fill the gap was reduced[,] [then] he would be the first off the list." (ECF Nos. 1 ¶ 20; 15-1 ¶ 23.)

On February 6, 2024, Johnson "attended a union meeting wherein 150 officers and upper command staff discussed the transfers." (ECF Nos. 1 ¶ 11; 15-1 ¶ 13.) During this meeting, Johnson spoke about the transfers and the impact these reassignments would have on the reassigned officers' careers. (ECF Nos. 1 ¶ 11; 15-1 ¶ 13.) Plaintiff alleges that the "Assistant Chief stated at the meeting . . . that how . . . Captain [Davis] handled the transfer was not acceptable and would be addressed." (ECF Nos. 1 ¶ 12; 15-1 ¶ 14.)

Plaintiff alleges that on March 14, 2024, officers received notice that "the plan was changed from over 60 being placed on patrol, down to 26 officers." (ECF Nos. 1 ¶ 13; 15-1 ¶ 15.) In other words, Plaintiff alleges that, more than a month after the union meeting, officers were notified that the number of officers who would be reassigned to patrol was cut

by more than half.

Plaintiff further alleges that on or around the same day, he was instructed to meet with Davis in his office.  (ECF Nos. 1 ¶ 14; 15-1 ¶ 16.)  According to Plaintiff, he encountered Lieutenant Jeffrey Price ("Price")—a member of the transfer selection committee whom Johnson seeks to add as a named defendant to this litigation through his proposed Amended Complaint—in the hallway outside Davis's office.  (ECF Nos. 1 ¶ 14; 15-1 ¶ 16.)  Plaintiff alleges that as he walked past Price and into Davis's office, Price "snickered at him."  (ECF Nos. 1 ¶ 14; 15-1 ¶ 16.)  Following this interaction, Johnson met with Davis, who informed him that he remained on the shortened list of 26 officers being sent to patrol.  (ECF Nos. 1 ¶ 14; 15-1 ¶ 16.)  Through his proposed Amended Complaint, Johnson adds an allegation that, presumably sometime following the meeting on February 6, 2024, Price "met with Sgt. Duvall and Capt. Davis and informed them that there was no way that he would let Plaintiff back into the building after what he did."  (ECF No. 15-1 ¶ 17.)

Johnson alleges that he filed an internal grievance, but claims "he was informed he would not be allowed to discuss the retaliation and could only appeal the punitive transfer." (ECF Nos. 1 ¶ 15; 15-1 ¶ 18.)  Plaintiff alleges that "Step 1 of the internal grievance was denied," and further that he "appealed to Step 2" but was denied.  (ECF Nos. 1 ¶¶ 16–17; 15-1 ¶¶ 19–20.)  According to Johnson, at "Step 1" of the internal grievance process, "Chief Roberts ["Roberts"] informed [him] . . . that only 'low risk' positions were taken to patrol," and that Roberts further explained "this evaluation was done with input of job descriptions from captains and a review by a committee as to who would make up the 26 individuals." (ECF Nos. 1 ¶¶ 22, 24; 15-1 ¶¶ 25, 27.)  Plaintiff attached the "job descriptions" as Exhibit 1

to his Complaint (ECF No. 1-1). He emphasizes that the job description for "Homeland Security & Counter-Terrorism Squad" denoted that "All Positions High Risk." (ECF No. 1 ¶ 23 (citing ECF No. 1-1 at 9); ECF No. 15-1 ¶ 26 (citing ECF No. 1-1 at 9).) Johnson complains that the job description for his position—included as Exhibit 2 to his Complaint— was "missing many essential job duties" and "marked as 'Medium/Low.'" (ECF No. 1 ¶ 23 (citing ECF No. 1-2 at 6); ECF No. 15-1 ¶ 26 (citing ECF No. 1-2 at 6).) Notably, Plaintiff appears to be the only person in his division to be listed as "low risk" for purposes of this evaluation. (ECF No. 1-2 at 6.) In his pleadings, Johnson alleges that 37 officers, including himself, were marked as "low risk", and only 26 officers were ultimately selected for patrol. (ECF Nos. 1 ¶¶ 26–27; 15-1 ¶¶ 29–30.) Plaintiff further alleges that the other reassigned officers "did not have specialized task forces or clearances" and their divisions were not listed as "high risk." (ECF Nos. 1 ¶ 28; 15-1 ¶ 31.)

Plaintiff further alleges he has applied to three specialized positions for which he is qualified since being informed of his transfer to patrol. (ECF Nos. 1 ¶ 29; 15-1 ¶ 32.) According to Johnson, he has not been considered for any of these positions "despite his experience and credentials." (ECF Nos. 1 ¶ 29; 15-1 ¶ 32.) He alleges that, during Step 1 of the internal grievance process, Roberts explained that he would not be considered for other jobs roles as he had already been transferred. (ECF Nos. 1 ¶ 30; 15-1 ¶ 33.) Johnson alleges that there is nothing in his "FOP contract" that says he cannot be considered for other positions when transferred. (ECF Nos. 1 ¶ 31; 15-1 ¶ 34.) Johnson then appealed to Step 2 of the internal grievance process, but the Department once again denied his request. (ECF Nos. 1 at 3; 15-1 at 3.)

6

Plaintiff's pleadings proceed to allege the following in unnumbered, paragraph format:

At this point the department is removing resources from a federal agency while skipping other low risk officers, such as media personnel or courthouse liaisons. This seems like a clear mismanagement of resources, as well as, looking at the person not the position. If this was merely about the position and not the person, Det. Johnson has submitted several inter office interest letters for the MCAC vacancy, RTIC staffing, and ATF TFO positions, all of which he has necessary training, clearances, and most importantly experience for.

Det Johnson is clearly qualified for these other positions yet is overlooked as a clear punishment and message to other officers to not speak out. This has created a culture of officers not wanting to speak up in fear of retaliation and jeopardizing their careers.

#### Conclusion

Plaintiff has taken every internal grievance measure available to resolve this complaint, however, Defendant has made every attempt to not take the complaint seriously or investigate Plaintiff's claims. Plaintiff has been subjected to a punitive transfer that jeopardizes his career, to further add to the retaliation, Plaintiff is not even being considered for other positions he is qualified and trained for. The [Department is] removing resources from a federal agency to complete the transfer while skipping other low risk officers, such as media personnel or courthouse liaisons. This is a clear mismanagement of resources, as well as, looking at the person not the position when making these employment decisions.

Plaintiff hereby avails himself to this court for a fair investigation into the allegations. The evidence shows Plaintiff was handpicked for the demotion back to patrol and this occurred after Plaintiff engaged in a protected activity. There is a more than causal relationship between the events. Plaintiff has been subjected to a punitive transfer as a result of the retaliation by Defendant.

(ECF Nos. 1 at 4–5; 15-1 at 4–5.)

On June 23, 2024, Johnson subsequently filed a charge of retaliation with the United

States Equal Employment Opportunity Commission ("EEOC") (ECF Nos. 1 ¶ 1; 15-1 ¶ 1.)

On or about June 26, 2024, the EEOC declined to proceed with his complaint and issued Johnson a Notice of Right to Sue. (ECF Nos. 1 ¶ 2; 15-1 ¶ 2.)[5]

On August 9, 2024, Johnson filed his initial Complaint with this Court alleging a single claim of retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, against the Department. (*See* ECF No. 1.) On September 6, 2024, the Department filed the pending Motion to Dismiss ("Motion to Dismiss" or "Defendant's Motion") (ECF No. 11). First, the Department contends that dismissal is appropriate pursuant to Rule 12(b)(4) and 12(b)(5) because service was never effectuated, as "[w]hile Plaintiff . . . transmit[ted] a copy of the summons to Defendant, this submission did not include the Complaint,"[6] and further that counsel did not consent to accepting service of the complaint by email. (ECF Nos. 11-1 at 3; 13 at 1.) Second, the Department contends that dismissal is appropriate pursuant to Rule 12(b)(5) because the Anne Arundel County Police Department is *non sui juris*. (ECF Nos. 11-1 at 3–5; 13 at 1.) The Department further argues that dismissal is appropriate pursuant to Rule 12(b)(6) (1) because Johnson failed to exhaust his administrative remedies, (ECF Nos.11-1 at 8; 13 at 2); and (2) because Plaintiff failed to sufficiently plead retaliation under Title VII (ECF Nos. 11-1 at 5–7; 15 at 2–3). Johnson filed a response in opposition (ECF No. 12), and Defendant replied (ECF No. 13).

After the Motion to Dismiss (ECF No. 11) was fully briefed, Plaintiff filed the pending Motion for Leave to File Amended Complaint (ECF No. 15), which included a proposed

---

[5] Citing to the Undersigned Judge's opinion in *White v. University of Maryland Medical Center*, 642 F.Supp.3d 504 (D. Md. 2022), Defendant argues that the issuance of this notice was premature as the EEOC must review charges for 180 days prior to granting a right to sue notice. (ECF Nos. 11-1 at 5; 13 at 2.)

[6] This argument makes much of the fact that the two Affidavits of Service filed in this case (ECF Nos. 9; 10) suggest that only the summons were served on Defendant and its counsel. Federal Rule of Civil Procedure 4(c)(1) provides that "[a] summons must be served with a copy of the complaint."

"Amended Complaint" (ECF No. 15-1), though no "redlined copy" of the proposed amended complaint was provided—as required by Local Rule 103.6. Plaintiff's Motion for Leave to File Amended Complaint (ECF No. 15)—which remains unopposed as of the date of this filing—proposes modest amendments to the Complaint. First, Plaintiff seeks to substitute "Anne Arundel County, Maryland" for "Anne Arundel Police Department," seemingly conceding that the Department is an entity *non sui juris*, (ECF No. 15-2 at 1–2), despite Plaintiff's earlier insistence to the contrary, (ECF No. 12-1 at 4). Plaintiff further seeks to add Price and Davis as named defendants. (ECF No. 15-2 at 1–2.) Plaintiff adds a single factual allegation: that "Lt. Price met with Sgt. Duvall and Capt. Davis and informed them that there was no way that he would let Plaintiff back into the building after what he did." (ECF No. 15-1 ¶ 21.) He contends this is "direct evidence of retaliation." (ECF No. 15-2 at 3.) Lastly, while the original Complaint cited to both Title VII and the Maryland Fair Employment Practices Act, MD. CODE, STATE GOV'T §§ 20-601 to 20-611, as bases for his retaliation claim, Plaintiff adds the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634, and the Fair Labor Standards Act, 29 U.S.C. §§ 201–219, as bases in his proposed Amended Complaint (ECF No. 15-1). The Court turns to consider the pending motions.

## STANDARD OF REVIEW

### I.    Motion to Dismiss

### A. Rule 12(b)(4)

Federal Rule of Civil Procedure 12(b)(4) permits a motion to dismiss for insufficient process. Typically, a motion to dismiss pursuant to Rule 12(b)(4) asserts a defect in the form or substance of process, rather than challenging the method of service. *Srivastava v. Kelly Servs.,*

*Inc.*, No. LKG-19-3193, 2022 WL 2716868, at *2 (D. Md. July 13, 2022); *Allen v. Cort Trade Show Furnishings*, No. ELH-19-2859, 2021 WL 1312898, at *2 (Md. Apr. 8, 2021).  This Court can exercise personal jurisdiction over a defendant only after the defendant has received valid service of summons.  *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984); *see also Sparks v. Transit Mgmt. of Cent. Md., Inc.*, No. ELH-21-1598, 2021 WL 5742336, at *3 (D. Md. Dec. 2, 2021) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.").  Once a defendant has challenged service under Rule 12(b)(4), the plaintiff bears the burden of demonstrating valid service pursuant to the requirements of Fed. R. Civ. P. 4.  *Fraley v. Meritus Med. Ctr., Inc.*, No. RDB 20-1023, 2021 WL 1215079, at *2 (D. Md. Mar. 31, 2021).

## B.  Rule 12(b)(5)

Because a federal court can exercise personal jurisdiction over a defendant only after that defendant has been properly served, Federal Rule of Civil Procedure 12(b)(5) permits a motion to dismiss for insufficient service of process.  *See Allen*, 2021 WL 131898, at *2 (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987); *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 228 (4th Cir. 2019)).  "Once service has been contested, the plaintiff bears the burden of establishing the validity of service pursuant to Rule 4."  *Parker v. Am. Brokers Conduit*, 179 F. Supp. 3d 509, 515 (D. Md. 2016) (citing *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006)).  While in some cases the failure to strictly comply with Rule 4 may not invalidate service of process if the defendant acquires actual notice of the pending action, the plain requirements for effecting service of process may not be ignored. *Armco*, 733 F.2d at 1089.

Under Federal Rule of Civil Procedure 4(e), an individual defendant may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.  Similarly, under Federal Rule of Civil Procedure 4(h), a domestic corporation subject to suit under a common name must be served:

> (1) In a judicial district of the United States:
>
> > (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
> >
> > (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant.

## C.  Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and

construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011).

## II.    Motions to Amend

Rule 15(a) of the Federal Rules of Civil Procedure provides the general framework for amending pleadings. Specifically, Rule 15(a) provides that, after a responsive pleading is served, a plaintiff may amend his complaint "by leave of court or by written consent of the adverse party." In general, leave to amend a complaint pursuant to Rule 15(a) shall be "freely" granted "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Foman v. Davis*, 371 U.S. 178,

182 (1962); *Lance v. Prince George's Cnty., Md.*, 199 F. Supp. 2d 297, 300–01 (D. Md. 2002).

Nevertheless, the matter is committed to the discretion of the district court, which may deny

leave to amend "when the amendment would be prejudicial to the opposing party, the moving

party has acted in bad faith, or the amendment would be futile." *Equal Rts. Ctr. v. Niles Bolton*

*Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *see also Simmons v. United Mortg. & Loan Inv., LLC*,

634 F.3d 754, 769 (4th Cir. 2011); *Steinburg v. Chesterfield Cnty. Plan. Comm'n*, 527 F.3d 377, 390

(4th Cir. 2008).

## ANALYSIS

The Court first addresses Defendant's Motion to Dismiss (ECF No. 11), which seeks

dismissal of the original Complaint in its entirety, before turning to address Plaintiff's Motion

for Leave to File Amended Complaint (ECF No. 15).

### I.    Defendant's Motion to Dismiss (ECF No. 11)

Defendant presents several grounds for dismissal of Johnson's original Complaint.  (*See*

ECF No. 11.)   First, the Department contends that dismissal is appropriate pursuant to

Rule 12(b)(4)  and  12(b)(5)  because  service  was  never  effectuated,  as  "[w]hile

Plaintiff . . . transmit[ted] a copy of the summons to Defendant, this submission did not

include the Complaint,"[7] and further that counsel did not consent to accepting service of the

complaint by email.  (ECF Nos. 11-1 at 3; 13 at 1.)  Second, the Department contends that

dismissal is appropriate pursuant to Rule 12(b)(5) because the Anne Arundel County Police

Department is *non sui juris*.  (ECF Nos. 11-1 at 3–5; 13 at 1.)  The Department further argues

---

[7] This argument makes much of the fact that the two Affidavits of Service filed in this case (ECF Nos. 9; 10) suggest that only the summons were served on Defendant and its counsel.  Federal Rule of Civil Procedure 4(c)(1) provides that "[a] summons must be served with a copy of the complaint."

that dismissal is appropriate pursuant to Rule 12(b)(6) (1) because Johnson failed to exhaust his administrative remedies, (ECF Nos.11-1 at 8; 13 at 2); and (2) because Plaintiff failed to sufficiently plead retaliation under Title VII (ECF Nos. 11-1 at 5–7; 15 at 2–3).  Johnson filed a response in opposition (ECF No. 12), and Defendant replied (ECF No. 13).

### A. Anne Arundel County Police Department Is an Entity *Non Sui Juris*. Nevertheless, the Court Will Substitute Anne Arundel County.

Preliminarily, the Court notes that the Defendant correctly notes that Anne Arundel County Police Department is an entity *non sui juris*.  (ECF No. 11 at 3–4.)  Under Maryland law, claims cannot be brought against county police departments, as they are "agents of the State and should not be viewed as separate legal entities."  *Hines v. French*, 852 A.2d 1047, 1068 (Md. App. 2004); *see also Boyer v. State*, 594 A.2d 121, 128 n.9 (Md. 1991) (explaining when "[n]either the Constitution nor any other provision of [Maryland] law . . . creates a governmental agency" with the name of the state agency being sued, that agency cannot be a defendant in a lawsuit).

The Department presents this as one reason for why this Court should grant Defendant's Motion to Dismiss.  (ECF No. 11 at 3–4.)  While initially resisted by Plaintiff, Johnson eventually conceded that Anne Arundel County Police Department is not a proper entity to be sued.  (See ECF Nos. 12-1 at 4; 15 at 1; 15-2 at 1–2.)  Accordingly, Johnson now seeks to amend his original complaint to include "Anne Arundel County, Maryland" as a named defendant.  The Court will not dismiss Plaintiff's Complaint on this basis.  Rather, for the sake of efficiency, the Court will substitute Anne Arundel County, Maryland ("Defendant" or the "County") as the named defendant and construe the original Complaint to be filed against the County as the appropriate entity.

14

**B. The Court Will Not Dismiss Plaintiff's Complaint for Ineffective Service.**

The Department contends that dismissal is appropriate pursuant to Rule 12(b)(4) and 12(b)(5) because service was never effectuated, making much of the fact that the two Affidavits of Service filed in this case (ECF Nos. 9; 10) suggest that only the summons were served on the Defendant and its counsel, and Federal Rule of Civil Procedure 4(c)(1) provides that "[a] summons must be served with a copy of the complaint."  (ECF Nos. 11-1 at 3; 13 at 1.) Defendant further notes that while "Plaintiff's counsel transmitted a courtesy copy of his Complaint to undersigned counsel on or about August 9, 2024," counsel was not asked to accept the Complaint by email.  (ECF No. 13 at 1.)  In his opposition, Plaintiff claims that the Affidavits of Service reflects a mistake made by the process server and that he "cannot change the Affidavit," (ECF No. 12-1 at 3–4), and he further adds in his motion to amend that he "has contacted the process server who explains the complaint was sent," (ECF No. 15-2 at 1).

Essentially, the parties dispute whether the process server provided a copy of the complaint in addition to the summons, with Plaintiff insisting both documents were provided and Defendant insisting to the contrary.  Plaintiff could have provided the Court with some form of supplemental sworn documentation from the process server stating as much, but he opted not to do so, even though he bears the burden of establishing that service was valid under Rule 4 following Defendant's challenge to service of process.  Nevertheless, the Court will not dismiss Plaintiff's Complaint on this basis, as Defendant clearly received actual notice of Plaintiff's Complaint and Motion for Leave to Amend her Complaint.  Rule 4 is a flexible rule that Courts liberally construe so long as a party receives sufficient notice of the complaint. *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006) ("Generally, when service of process

15

gives the defendant actual notice of the pending action, the courts may construe Rule 4 liberally to effectuate service and uphold the jurisdiction of the court.") (citations omitted); *see also Armco, Inc. v. Penrod-Stauffer Bldg. Sys. Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984) (explaining that while the "plain requirements for the means of effecting service of process may not be ignored," where the defendant has actual notice of the action, "every technical violation of the rule or failure of strict compliance may not invalidate the service of process").

### C. Exhaustion of Administrative Remedies.

While not jurisdictional, administrative exhaustion is a prerequisite for pursuing a Title VII claim in this Court. *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 549 (2019). That is, under Title VII, a plaintiff must file a charge with the EEOC or the equivalent state agency before filing suit in this Court, and must do so within 180 days of the alleged unlawful employment practice (or 300 days if a state or local agency enforces a law that prohibits employment discrimination on the same basis).[8]  42 U.S.C. § 2000e-5(f)(1). Upon filing with the EEOC (or the equivalent state agency) and if not resolved in conciliation by that agency, the agency must issue a notice of the right to sue at the completion of its investigation and proceedings. *Id.* As the Fourth Circuit has explained, this filing of an administrative charge serves two important purposes: first, "notif[ying] the charged party of the asserted violation," and second, "bring[ing] the charged party before the EEOC and permit[ting] effectuation of the [Civil Rights] Act's primary goal, the securing of voluntary compliance with the law." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (citations omitted).

---

[8]  The ADEA also includes an administrative exhaustion requirement. Under the ADEA, a charging party may file a lawsuit based upon the matters that are the subject of a charge once the charge has been pending before the EEOC for 60 days. It is not necessary to obtain a notice of right to sue before commencing a civil lawsuit under the ADEA. 29 U.S.C. § 626(d)(1).

Here, Johnson alleges that he filed a charge of retaliation with the EEOC on June 23, 2024, and further alleges that he was issued a Notice of Right to Sue on June 26, 2024. (ECF Nos. 1 ¶¶ 1–2; 15-1 ¶¶ 1–2.)  That is, Johnson alleges that the EEOC issued him a notice of right to sue after processing his case for just four days.  In its Motion to Dismiss, the Defendant takes issue with this timeline, arguing that no notice to the Defendant or investigation occurred, and that "[t]he EEOC must review charges for 180 days prior to issuance of a right to sue notice."  (ECF No. 11-1 at 5.)  As supporting authority for this argument, Defendant cites to this Court's opinion in *White v. University of Maryland Medical Center*, 642 F. Supp. 3d 504 (D. Md. 2022).  In *White*, this Court explained that "Congress provided exactly four avenues for the EEOC to dispose of a charge: dismissal, conciliation, agency litigation, or a private action after 180 days," and that 29 C.F.R. § 1601.28(a)(2)—which permits the EEOC to issue an early right to sue letter without first attempting to investigate the merits of the charge—violated the agency's duty to investigate and exceeded the agency's authority under Title VII.  642 F. Supp. at 512.  Nevertheless, because the Court can dispose of Plaintiff's Title VII claim for failure to sufficiently plead a Title VII retaliation claim as discussed below, the Court need not further address the issue of whether Johnson exhausted his administrative remedies.

**D. Johnson Has Not Sufficiently Pled a Title VII Retaliation Claim.**

Johnson is unable to sufficiently state a claim for retaliation under Title VII. Specifically, Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against someone because of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2.  Title VII's anti-retaliation provision renders it unlawful for an employer to

discriminate against an employee "because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." *See* 42 U.S.C. § 2000e-3(a).

A plaintiff who lacks direct evidence of retaliatory animus may utilize the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973), to preserve a Title VII retaliation claim at the summary judgment stage. *See Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249–52 (4th Cir. 2015). Under that framework, the plaintiff must first establish a prima facie case of retaliation; the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its allegedly retaliatory action; and finally, the plaintiff must demonstrate that the reason articulated by the employer was not its true reason, but rather a pretext for retaliation. *Id.* at 250. At the initial step, to establish a prima facie case of retaliation, the plaintiff must show: "(1) engagement in a protected activity; (2) [an] adverse employment action; and (3) a causal link between the protected activity and the employment action." *See Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

Importantly, however, a Title VII retaliation claim may survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) even if the complaint does not allege facts sufficient to establish the *McDonnell Douglas* framework's prima facie case. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002). Indeed, there is no requirement that the complaint contain such facts; rather, the ordinary rules apply and the complaint therefore need "contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). That is because the *McDonnell Douglas* framework's prima

facie case "is an evidentiary standard, not a pleading requirement." *Id.* at 510. At bottom, to adequately plead a Title VII retaliation claim, the complaint must "allege[] facts supporting a plausible inference that [the employer took an adverse employment action against the plaintiff] 'because' of [the plaintiff's] protected activity." *See Holloway v. Maryland*, 32 F.4th 293, 300 (4th Cir. 2022) (quoting 42 U.S.C. § 2000e-3(a)).

Here, Johnson has failed to sufficiently plead a retaliation claim under Title VII. Assuming, arguendo, that Plaintiff has suffered an adverse employment action, his claim for retaliation still fails under Title VII as he does not show that he was engaged in a protected activity. Simply stated, Johnson appears to misunderstand what protected activity means under Title VII. Plaintiff provides no evidence that his speaking at the February 6th union meeting constituted participation in an EEO process or opposition to discrimination based on a characteristic covered under this Act. In response to Defendant's Motion to Dismiss, Plaintiff emphasizes that he "is 41 years old and one of the more senior officers, he conducted protected speech and was retaliated against. Plaintiff feels this is due to his age[.]" (ECF No. 12-1 at 4.) As Defendant correctly notes, age is not a protected characteristic under Title VII. *See Faulconer v. Centra Health, Inc.*, 808 Fed. App'x 148, 153 (4th Cir. 2020) ("Title VII prohibits employment discrimination based on race, color, religion, sex, or national origin—not age— and prohibits retaliation against anyone who opposes *those* practices or makes a charge of discrimination in violation of *Title VII*.") (emphasis in original). As Johnson does not allege that he participated or opposed discrimination based on his race, color, religion, sex, or national origin, he is unable to demonstrate that he was engaged in a protected activity nor establish causation between the alleged adverse action and protected activity. At bottom,

Johnson fails to allege facts that support the plausible inference that the Department took an adverse action against him because of protected activity. For these reasons, Johnson has not sufficiently pled a retaliation claim under Title VII.

## II.    Plaintiff's Motion for Leave to File Amended Complaint (ECF No. 15)

In general, leave to amend a complaint pursuant to Rule 15(a) shall be "freely" granted "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Foman v. Davis*, 371 U.S. 178, 182 (1962); *Lance v. Prince George's Cnty., Md.*, 199 F. Supp. 2d 297, 300–01 (D. Md. 2002). Nevertheless, the matter is committed to the discretion of the district court, which may deny leave to amend "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rts. Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *see also Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011); *Steinburg v. Chesterfield Cnty. Plan. Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008).

Johnson contends that he seeks leave to amend (1) to resolve issues with the named defendants and service of process; (2) to add the Age Discrimination in Employment Act as a basis to his claim of retaliation; and (3) to provide "enhanced" factual support. (ECF No. 15-2 at 1–4.) Johnson attaches the proposed Amended Complaint, (ECF No. 15-1), though as noted, no redlined complaint was provided, as required by Local Rule 103.6.

As explained above, Rule 15(a) is construed to freely allow amendments where it would not prejudice the opposing party,[9] the movant is not acting in bad faith, or where the

---

[9] To determine whether an amendment is prejudicial, courts often look to the nature and timing of the amendment. *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006). "A common example of a prejudicial amendment is one that 'raises a new legal theory that would require the gathering and analysis of facts not already considered by the defendant and is offered shortly before or during trial.'" *Id.* (quoting *Johnson v. Oroweat Foods*, 785 F.2d 503, 509 (4th Cir. 1986)).

amendments are not futile.[10]  In brief, Johnson's proposed Amended Complaint is futile and shall be denied on that basis.  This Court goes into more detail by first addressing the impact of Johnson's additional factual support on his Title VII claim, before turning to his addition of the ADEA as a basis for his claim of retaliation.

### A. Johnson's Proposed Additional Factual Support Has No Impact on His Title VII Retaliation Claim.

In his Amended Complaint, Johnson seeks to provide "enhanced" factual support for his retaliation claim.  Specifically, Plaintiff alleges that presumably sometime following the meeting on February 6, 2024, Price "met with Sgt. Duvall and Capt. Davis and informed them that there was no way that he would let Plaintiff back into the building after what he did." (ECF No. 15-1 ¶ 17.)  As discussed above, to adequately plead a Title VII retaliation claim, a plaintiff must "allege[] facts supporting a plausible inference that [the employer took an adverse employment action against the plaintiff] 'because' of [the plaintiff's] protected activity."  *See Holloway v. Maryland*, 32 F.4th 293, 300 (4th Cir. 2022) (quoting 42 U.S.C. § 2000e-3(a)).  As with his original Complaint, Johnson's proposed amended complaint wholly fails to allege that he was engaged in any protected activity under Title VII.

---

[10] *See Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019) ("A proposed amendment is futile when it is 'clearly insufficient or frivolous on its face.'") (quoting *Johnson v. Oroweat Foods*, 785 F.2d 503, 510 (4th Cir. 1986)); *US Airline Pilots Ass'n v. Awappa* LLC, 615 F.3d 312, 320 (4th Cir. 2010) (concluding that the district court did not abuse its discretion in denying leave because the proposed amendments "would have no impact on the outcome of the motion to dismiss."); *Ogunsula v. Maryland State Police*, Civ. No. ELH-20-2568, 2022 WL 3290713 (D. Md. Aug. 11, 2022) (Hollander, J.) ("A proposed amendment is also futile if it would add a new claim that fails to state a claim upon which relief could be granted, and thus would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).").

**B. Johnson Has Not Sufficiently Pled a Retaliation Claim Under the ADEA.**

Johnson's proposed amended complaint further fails to sufficiently plead a claim for retaliation under the ADEA.  The Age Discrimination in Employment Act provides that it is "unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this Act."  29 U.S.C. § 623(d).  To establish a prima facie case of retaliation, a plaintiff must demonstrate that: "(1) he engaged in protected activity; (2) an adverse employment action was taken against him; and (3) there was a causal link between the protected activity and the adverse action."  *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (en banc).

Assuming that Johnson suffered an adverse employment action, his claim for retaliation fails under the ADEA because he is unable to show that he was engaged in protected activity, and is further unable to establish causation.  Once again, Johnson appears to misunderstand what protected activity means, this time under the ADEA.  Plaintiff provides no evidence that his speaking at the February 6th union meeting constituted participation in an EEO process or opposition to discrimination based on age.[11]  Furthermore, even as Plaintiff tells it, he was terminated because he spoke out against the reassignments—not because he opposed conduct, he reasonably believed was unlawful under the ADEA.  Based upon the current filings (ECF Nos. 1; 12; 14; 15), it appears that Plaintiff merely attempts to

---

[11] *See* EEOC, Enforcement Guidance on Retaliation and Related Issues, EEOC-CVG-2016-1 (August 25, 2016), https://www.eeoc.gov/laws/guidance/enforcement-guidance-retaliation-and-related-issues.

raise his claim of retaliation under the ADEA because Johnson is a 41-year-old man, and thus qualifies as a member of the protected class. This presumption is entirely inconsistent with the purpose and objectives of the ADEA.

Nevertheless, while Plaintiff's retaliation claim under Title VII is DISMISSSED WITH PREJUDICE, the Court deems it prudent to afford Johnson the opportunity to amend his complaint with respect to his retaliation claim under ADEA.

## CONCLUSION

For the reasons stated above, it is hereby ORDERED this 21st day of July, 2025, that Defendant's Motion to Dismiss (ECF No. 11) is GRANTED; and Plaintiff's Motion for Leave to File Amended Complaint pursuant to Fed. R. Civ. P. 15 (ECF No. 15) is DENIED.

While Plaintiff's Title VII retaliation claim is DISMISSED WITH PREJUDICE, this Court will afford Johnson the opportunity to file an Amended Complaint with respect to his retaliation claim under the Age Discrimination in Employment Act. He may file a revised Amended Complaint within fifteen days of this Opinion, i.e., by August 5, 2025. Such an amended complaint may still be subject to dismissal by reason of repeated failure to cure deficiencies or futility of the amendment. *Harvey v. CNN, Inc.*, 520 F. Supp. 3d 693, 725 (D. Md. 2021) (citing *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008)). If a further amended complaint is not filed by August 5, 2025, the Clerk of Court is instructed to CLOSE this case.

A separate Order follows.

/s/
_____
Richard D. Bennett
United States Senior District Judge